Leo G. IVEN, Plaintiff-Respondent,

v.

HAZELWOOD SCHOOL DISTRICT, Defendant-Appellant.

No. 50503.

Missouri Court of Appeals, Eastern District, Division Three.

April 29, 1986.
Rehearing Denied May 28, 1986.

definite contract of employment of a permanent-tenured mathematics teacher, Leo G. Iven. The proceeding before the circuit court was authorized by § 168.120.2.[1] By judgment of the circuit court teacher's employment was reinstated with back pay accruing since the date of termination.

Mr. Iven taught mathematics at Hazelwood West Junior High School. He had been a teacher for twenty-four years and employed by the Hazelwood School District for nineteen years. Accordingly, he was a permanent teacher as defined in § 168.-104(4) and entitled to the protection of the provisions of § 168.116 regarding the termination of a permanent teacher.

Iven timely filed a notice of appeal with the Board of Education from its decision to terminate employment. The circuit court reviewed the proceedings before the Board as provided in Chapter 536 RSMo 1978 and in accord with § 168.120. The circuit court found that the Board failed to comply with the provisions of § 168.116 in that: (1) it failed to provide a written warning specifying causes which, if not removed, may result in charges; (2) the superintendent failed to meet and confer in a good faith effort to give the teacher a chance to remedy any defects in his performance; (3) that the Board failed to serve upon the teacher written charges specifying with particularity the grounds alleged to exist for termination; and (4) the Board considered and relied on matters which were not the subject of warnings and charges but were introduced and received in evidence.

On appeal the Board contends that as a matter of law it complied with the warning requirements of § 168.116.2 and the meet and confer provisions of the same section; there was sufficient notice of charges to comply with § 168.116.1; and any evidence received and considered by the Board outside of the warnings and charges was not a matter of error because the teacher raised the issue. The Board also contends that it proved its charges by clear, cogent and convincing evidence.

Robert P. Baine, Susan E. Kaiser, Clayton, for defendant-appellant.

Sally E. Barker, St. Louis, for plaintiff-respondent.

KAROHL, Presiding Judge.

The Board of Education of the Hazelwood School District (Board) appeals a judgment of the circuit court reversing a decision of the Board to terminate the in-

1. All statutory citations are to RSMo 1978.

We find that the Board failed to follow the mandatory provisions of § 168.116. Accordingly, we affirm the decision of the circuit court.

◼ This court considered § 168.116 in *Lindbergh School District v. Syrewicz,* 516 S.W.2d 507 (Mo.App.1974). We there made the following observations:

The Teacher Tenure Act evidences a legislative intent to provide substantive and procedural safeguards with respect to tenured teachers. As we view the Act, its purpose is to establish strictly defined grounds and procedures for removing a permanent teacher which may not be evaded or other procedures substituted therefor.

Our General Assembly has declared in the Teacher Tenure Act that there be certain procedural safeguards for teachers for which a civil trial cannot be used as a substitute. Deviation from these statutory procedures are, by their very nature, prejudicial to the beneficiaries of the Act since the Act itself affords a permanent teacher all the safeguards outlined in § 168.116.

*Lindbergh School District,* 516 S.W.2d at 512. Accordingly we view the question of whether the Board complied with the procedural and substantive provisions of the Act in the termination proceeding as a question of law, and review under Rule 73.01 as interpreted in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

◼ The chronological sequence of requirements for termination of a tenured teacher varies slightly from the provisions of § 168.116. The first step is a written *warning* stating specifically causes which, if not removed, may result in *charges.* The second step is a requirement that the superintendent, or a designated representative, "meet and confer with the teacher in an effort to resolve the matter." If necessary, the third step is the service of written *charges* specifying with particularity the grounds alleged to exist for termination together with a notice of hearing on the charges. A hearing by the Board of Education must be granted if requested by the

teacher and must be held not less than twenty nor more than thirty days after notice of hearing has been furnished to the permanent teacher.

The Hazelwood School District adopted a teacher evaluation policy and procedure on November 1, 1983 as its policy No. 533.6. Performance criteria were established in four categories: quality of performance, professional knowledge, work habits, and general responsibilities.

Consistent with the policy and procedure Iven was evaluated on January 16, 1984. A copy of the written evaluation was furnished to the teacher and reflected unsatisfactory performance in quality of performance and general responsibility categories. His work habits were satisfactory and his professional knowledge was noted to need improvement. The written evaluation indicated twelve areas under quality of performance which needed improvement and five areas of general responsibility which also required attention.

◼ On February 2, 1984, the superintendent of the Hazelwood School District addressed a letter to the teacher which we find satisfied the requirements of warning of causes which may result in charges. § 168.116.2. The letter outlines causes relating to competency in quality of performance and general responsibility. These causes may be found in Policy No. 533.6. The letter also describes these causes as deficiencies, which, if not removed, may result in a list of charges being brought to the Board of Education. The requirement of specificity was met by describing nine deficiencies recognized in the teacher evaluation policy and procedure as guidelines for performance of teachers. All that § 168.114 and .116 require is that the written warning provide the teacher an opportunity to know exactly what the complaints are against him and to afford him a chance to cure the situation. *Blue Springs Reorganized School District IV v. Landuyt,* 499 S.W.2d 33, 36 (Mo.App.1973). The letter containing the general causes of incompetency, the specific causes and a reference

to the formal evaluation of January 16, 1984 afforded the teacher the necessary statutory warning.

■ What followed failed to satisfy the requirements of the statute. The letter designated Dr. F.C. Huss to hold a conference with the teacher regarding the deficiencies. Thus, Dr. Huss was chosen as the superintendent's designated representative. § 168.116.2. According to the evidence, Dr. Huss observed four of Iven's classes on three different days during the balance of the 1983–84 school year. None of the observations were scheduled nor were any pre-observation conferences held. Huss and Iven met for ten minutes after one of the classes and very briefly after another. Huss did not indicate to Iven on either occasion how he could improve his performance nor was there any specific reference to the general causes or specification of causes in the warning letter.

On June 4, 1984, Huss held a conference with Iven to discuss his performance. Huss told Iven that his evaluation period would be extended through the first quarter of 1984–85 school year. Huss testified that at that time he was sure that Iven could not improve. Huss did not observe or evaluate Iven during the first part of the following school year nor at any time after June 4, 1984 until formal charges were attempted by a letter of November 21, 1984.

During the fall of 1984 and during the school year of 1984–85, the Chairman of the Mathematics Department, Robert Carmen, evaluated the teacher's performance during his first and sixth period classes. He reported that the teacher's first period class was satisfactory but the sixth period class needed improvement. During this period the teacher was assigned five seventh grade math classes in the middle and lower ability range. The sixth period class had an unusually high concentration of students who had learning and behavioral disabilities. The evidence does not disclose the motivation for assigning a teacher serving under warnings to a class with a high concentration of learning and behavioral

disabilities. Iven testified that Carmen had indicated to him that he had made the necessary improvements to avoid termination proceedings. This was not denied by Carmen in his testimony. Of greater importance, Carmen was not a designated representative of the superintendent. Nor was there evidence to support a finding that Carmen was designated to assist the teacher in removing any of the causes mentioned in the letter of February 2, 1984.

Dr. Huss wrote a memorandum on May 31, 1984 addressed to Iven with a copy to be added to his personnel file for the benefit of the superintendent. This letter was offered in evidence as an exhibit by the Board and makes no reference to any meet and cure efforts. It includes a number of deficiencies not contained in the warning letter. For example, it suggests an improvement of personal appearance which was not specified as a cause. Further, Mr. Carmen visited the teacher's classes on September 10, September 12, September 17, September 20, October 9, and October 10, 1984, and observed that some classes went very well, that the teacher seemed "to have this class working for you" and "your lesson was nicely done." This evidence wholly fails to support a finding that the Board exercised the required good faith effort to give the teacher a chance to remedy defects. *Blue Springs Reorganized School District IV v. Landuyt*, 499 S.W.2d 33, 37 (Mo.App.1973).

■ We also find that the requirement of written charges specifying with particularity the grounds alleged to exist for termination was not satisfied by the Board's letter of November 21, 1984. That letter begins by reference to a letter of May 19, 1983 which was written by Dr. Thomas Lawson, Superintendent of Schools, to inform the teacher of substandard performance. Because the Board proceeded on the basis that the February 2, 1984 letter was the required warning required by statute, the May 19, 1983 letter is irrelevant. Nor was the May 19, 1983 letter followed by an effort to meet and cure any causes which may have been mentioned in that letter.

The November 21, 1984 letter also mentions that Dr. Dougherty (principal of school), Robert Carmen, and Dr. F.C. Huss, had been working with teacher to improve his performance. There was no evidence to support this statement nor, except for Dr. Huss, is it relevant. Of critical importance, the letter of November 21, 1984 contains a misstatement that there was a "list of *charges* in the attached letters of May 19, 1983 and February 2, 1984." There were no charges made in either of those letters, nor did they purport to list charges.

The letter of November 21, 1984 is further deficient because it relies only on the grounds of "competency lacking in quality of performance, and competency lacking in general responsibility." Such charges were the only charges made before hearing and they fall short of specifying with particularity the grounds alleged to exist for termination. This statement of charges was wholly deficient and failed to comply with the requirements of § 168.116.1. *Dameron v. Board of Education of Lebanon School District R-3*, 549 S.W.2d 671, 676 (Mo.App.1977). It was not possible for the teacher to know from the general charges made in the letter of November 21, 1984 what specific grounds were to be tried at the termination proceeding. In addition, the letter was confusing because of references to causes other than those mentioned on February 2, 1984 and to an irrelevant letter of May 19, 1983.

Because we find the Board of Education failed to comply with the mandatory requirements of § 168.116.1 and .2, we affirm the decision of the trial court which ordered the teacher reinstated with back pay and benefits.

SIMON and GARY M. GAERTNER, JJ., concur.