**In the Matter of Margaret ARTHERTON, Appellant,**

v.

**The BOARD OF EDUCATION OF the SCHOOL DISTRICT OF ST. JOSEPH, Respondent.**

**No. WD 39514.**

Missouri Court of Appeals, Western District.

Jan. 26, 1988.

---

L. Glen Zahnd, Savannah, for appellant.

John P. Beihl and Keith W. Ferguson of Brown, Douglas & Brown, St. Joseph, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is an appeal from a circuit court judgment affirming the termination of a tenured teacher by a local school board (hereinafter the Board). This court affirms the Board's decision.

Appellant presents two points which, in summary, charge that the trial court erred because (1) the decision was contrary to law in that it failed to comply with § 168.116.2, RSMo 1986 [1], and (2) there was not, upon the whole of the record, substantial and competent evidence to support the decision.

The essential facts are as follows:

Appellant, Margaret Artherton, obtained tenure as a public school teacher in the St. Joseph School District at the conclusion of the 1981–82 school year. She had previously been certified as a teacher in Core Curriculum, English, and Social Studies. Her teaching duties had included teaching English, Spelling, Economics, and Reading to seventh grade students.

By a letter dated April 11, 1986, appellant was notified by the district superintendent that charges of incompetency and inefficiency might be filed against her if the causes set forth in the letter were not corrected within thirty days of the date of the letter.[2] On May 30, 1986, charges of incompetency and inefficiency were filed by the Board.[3] A notice of hearing was filed with the charges as prescribed by § 168.116.3. Appellant made formal denial of the charges and requested a closed hearing before the Board. A full hearing was conducted, during which appellant was represented by counsel and afforded every opportunity to cross-examine witnesses and to present any evidence on her behalf which she deemed applicable. The Board, subsequent to the hearing, entered its decision supported by extensive findings of fact and conclusions of law. The Board, by unanimous vote, terminated the teaching contract of appellant. Appellant then presented the matter to the Circuit Court of Buchanan County for review. The circuit court entered its judgment, affirming the Board's decision. This appeal followed. All additional facts deemed necessary are set forth *infra*.

Appellant's first point challenges the decision and judgment of the Board concerning her termination on the basis that the proceedings resulting in her termination failed to comply with the requirements of

---

**1.** All subsequent references to the Missouri Revised Statutes are to RSMo 1986 unless otherwise indicated.

**2.** Such letter notice is prescribed by § 168.116.2.

**3.** Such filing of charges is prescribed by § 168.116.1.

§ 168.116.2. Specifically, appellant asserts that the letter of April 11, 1986, which notified her that if the alleged incompetency and inefficiency were not corrected within thirty days she might face formal charges, did not designate anyone to meet and confer with her after the thirty days. She asserts that this is mandatory under § 168.116.2. That statutory provision reads as follows:

**168.116. Termination by board—notice —charges**

\* \* \* \* \* \*

2. At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in line of duty, the teacher shall be given by the school board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter.

Appellant further asserts that there is no evidence that the district superintendent met and conferred with her or that he designated anyone to do so.

Appellant concedes that on May 22, 1986, an evaluation of her was made by her school principal, Rex Geary. She contends, however, that this evaluation was part of the district's program on teacher evaluation. There is no dispute that the May 22, 1986 evaluation included many of the issues specified in the previous "thirty-day letter" dated April 11, 1986. Appellant points out that the findings of fact by the Board do not include the designation by the superintendent or his having met and conferred with her. Simply stated, appellant asserts that § 168.116.2 requires that a superintendent or his designee meet and confer with a tenured teacher no sooner than thirty days subsequent to the issuance of service of notice of charges of incompetency, inefficiency, or insubordination in the line of duty upon a tenured teacher.

Appellant is absolutely correct in declaring that is what the statute prescribes. She is also correct that the Eastern District Court of Appeals has declared that the issue of whether a school board has complied with the procedural and substantive provisions of the state Teacher Tenure Act regarding the termination of teachers within that act is a question of law. *Iven v. Hazelwood School District*, 710 S.W.2d 462, 464 (Mo.App.1986). In *Iven*, 710 S.W. 2d at 465, the court went on to declare that § 168.116.2 required a superintendent or his designee to meet and confer with the particular teacher.

Neither § 168.116.2, nor any decision thereunder, mandates that a superintendent, if he or she so elects, need follow any particular form or format in the use of a designee. Such form or format need not even be in writing. Appellant concedes this point. However, appellant claims there is no evidence that the district superintendent met and conferred with her, or that he designated anyone to meet and confer with her. She follows that claim with the conclusion that nobody ever met and conferred with her, and since that was a mandatory requirement, the entire subsequent proceedings, including the order of termination, are a nullity.

To state the obvious, or rather to emphasize what should be obvious to any district superintendent, the most efficient administrative procedure would include a clear and unequivocal statement of who the designee is to be in such proceedings, in those cases where a superintendent opts to make such a designation, in writing, attached to or incorporated within the thirty-day notice prescribed in § 168.116.2. Such a procedure would, in all cases, preclude any challenge such as is presented by appellant herein. While the above procedure is the most preferred, that is not to say it is required by the statute.

The question in the present case is whether, under the facts and circumstances, the requirements of § 168.116.2 have been met. The record herein discloses the evidence upon the issue. Appellant, by counsel, made the following inquiry:

Q. (By Mr. Zahnd, attorney for appellant): With respect to the exthibits (sic) introduced by Mr. Beihl and particularly what's sometimes referred to as the thir-

ty-day letter of warning or the warning letter that was initially sent to Mrs. Artherton, do you know from your own knowledge whether or not at the end of that thirty-day time there was a meeting with the teacher and your designated representative to confer in an effort to resolve the issues set out in that letter? Do you know whether or not there was such a meeting, sir?

A. (Dr. Gerald D. Troester, Superintendent of Schools for the School District of St. Joseph) To the best of my knowledge, there was such a meeting; that's correct.

Q. And to your knowledge, with whom was that meeting?

A. You mean who conducted it and who was present?

Q. Yes.

A. The meeting, I'm pretty sure, was conducted by Mr. Rex Geary, as principal of Truman Middle School, with Mrs. Artherton.

Then, again, the record reveals:

Q. (By Mr. Zahnd) After Mrs. Artherton received what we call the thirty-day warning letter and before writing the letter of May 29, 1986, did you and Mrs. Artherton have a discussion about what improvement or progress had been made in response to the thirty-day warning letter?

A. (By Rex Geary, principal of middle school where Mrs. Artherton was employed as a teacher) Correct.

Q. Now, when did that take place?

A. I'm not positive at this point in time, but we did do that, yes. It was done during the summative evaluation.

Upon the record, there is testimony by the superintendent that he mailed the "thirty-day" notice to appellant by certified mail. The record clearly indicates that the principal of the school sought and secured the "thirty-day" notice from the superintendent. The principal also obtained either the original of the "thirty-day" letter or a copy thereof, and in the company of another school employee, personally delivered the "thirty-day" notice to appellant. The record also discloses that some ninety days

later, there was a "meet and confer" session between appellant and the school principal.

So what is to be concluded from the above actions? It can reasonably be inferred that the school principal was the designee of the superintendent. The principal sought and obtained the "thirty-day" notice. He was given possession of it by the superintendent. He personally delivered it to appellant. Appellant, by counsel, acknowledged the designation by the superintendent in inquiry of the superintendent as to whether the superintendent knew if a "meet and confer" meeting was ever conducted. The superintendent also stated that he was "pretty sure" the "meet and confer" meeting was conducted by the principal.

One of the requirements of § 168.116.2 is that the superintendent, or a designated representative, "meet and confer with the teacher in an effort to resolve the matter," *Iven v. Hazelwood School District*, 710 S.W.2d at 464. It has also been stated that the main purpose of said statute is to give the teacher an opportunity to know exactly what the complaints against him or her are and to afford him or her a chance to cure the situation. *Hanlon v. Board of Education of the Parkway School District*, 695 S.W.2d 930, 932 (Mo.App.1985); *Rainwater v. Board of Education of Greenville R–2 School District of Wayne County*, 645 S.W.2d 172, 175 (Mo.App.1982); *Rafael v. Meramec Valley R–III Board of Education*, 569 S.W.2d 309, 312 (Mo.App.1978); *Dameron v. Board of Education of the Lebanon School District*, 549 S.W.2d 671, 675 (Mo.App.1977); *Pollard v. Board of Education Reorganized School District No. III, Platte County*, 533 S.W.2d 667, 670 (Mo.App.1976); *Blue Springs Reorganized School District IV v. Landuyt*, 499 S.W.2d 33, 36–37 (Mo.App.1973). *See also Cozad v. Crane School District R–3*, 716 S.W.2d 408, 411 (Mo.App.1986).

■ It cannot be said that what occurred in the present case violated the intent and purpose of § 168.116.2. It is noted that § 168.116, inclusive of § 168.116.2, has been construed as a substantive and proce-

dural safeguard for tenured teachers, and that deviations from the procedures prescribed by § 168.116 are, by their nature, prejudicial. *Lindbergh School District v. Syrewicz,* 516 S.W.2d 507, 512 (Mo.App. 1974), as cited in *Iven v. Hazelwood School District,* 710 S.W.2d at 464. However, there was no deviation in the present case, but this is merely a situation where, from the evidence upon the record, it must be concluded from all the facts and circumstances that the principal of the school was the designee of the superintendent.

There is no merit to appellant's point one and it is ruled against her.

Under her final point, appellant charges that the evidence was not competent and substantial to support the decision of the Board.

Obviously, the appellant was terminated from her teaching contract on the basis of incompetency and inefficiency. While our statutes do not provide a definition of incompetency, that term has been stated as a teacher's ability "to perform his professional teaching duties in a manner acceptable to the Board." *Birdwell v. Hazelwood School District,* 352 F.Supp. 613, 626 (E.D. Mo.1972), aff'd, 491 F.2d 490 (8th Cir.1974). While in *Birdwell* the definition was declared relative to consideration of § 168.126, this court perceives no reason why the same definition is not applicable to any proceeding regarding a tenured teacher wherein the question of incompetency is involved. This court adopts the foregoing definition and holds it is applicable to proceedings pursuant to § 168.116.

This court, upon its review, is prohibited from substituting its judgment for that of the Board and is left to the determination whether the Board entered its findings, conclusions, and decisions upon proper consideration of the evidence presented to it. *Citizens for Rural Preservation, Inc. v. Robinett,* 648 S.W.2d 117, 124 (Mo.App. 1982, *modified* 1983.).

The Board herein entered detailed findings and conclusions. Those findings, which bear upon appellant's incompetency, are summarized as follows:

Pursuant to mandated guidelines for Performance–Based Teacher Evaluation, appellant was observed on numerous occasions, both on a scheduled and nonscheduled basis, by the principal of the school and others relative to her teaching performance. Evaluation of appellant's performance revealed needed improvement in motivation, enthusiasm, meeting individual needs, and parental involvement. The record indicates that even after appellant was apprised of the foregoing deficiencies, little or no progress was made by her in correcting these deficiencies. The record discloses that during a parent-teacher conference, appellant was confronted by a group of parents regarding the grades entered by appellant for their children. Appellant, in response to the parents, stated that the students had not turned in certain paperwork, so she entered a failing grade. This confrontation caused the principal to investigate appellant's grade book. He discovered not only a limited number of grade entries, but that there was no labeling of the grades and incorrect averaging of grades. Although appellant was counseled by the principal and a mathematics teacher who in turn counseled appellant on how to mathematically average grades, the principal testified that he saw no improvement by appellant in regard to her grade book. The evidence also revealed that at the end of the 1985–86 school year, the principal observed a parent, by using a calculator, averaging her own child's grade for entry of a grade by appellant. The evidence suggests that appellant lacked the ability to average grades. The grade book contained instructions on how this was to be achieved, but that, plus the counseling of appellant, led to no improvement in the matter. The grades of some seven or eight students were changed as a result of the parents doing the averaging.

The testimony of the principal disclosed that during class, appellant did not teach the students, never gave any input to the students, and never supplied the students with new information designed to lend *meaning to the material* assigned to the students. These deficiencies were brought to the attention of appellant, and two other

teachers were assigned to assist her in developing teaching skills. The testimony of the two assigned teachers was that appellant either could not understand or elected not to apply the skills of which appellant was instructed. In addition, appellant was required to attend voluntary teaching sessions (other teachers were not *required* to attend), but appellant showed no improvement as a result of these efforts by the school principal. Furthermore, appellant was assigned job targets by the principal for the school year 1985–86, and the principal observed no accomplishment regarding these targets.

Observation of appellant continued, and at each observation, a discussion was held with appellant. The principal testified that he observed no improvement in appellant's teaching process. On one occasion, appellant was advised of a scheduled observation and was told what she was to teach during that class period. The principal, as an observer, testified that appellant did not follow the assigned lesson plan. She presented no new information to the students, no modeling, no demonstrative explanation, and no monitoring of the students relative to the subject lesson. He also observed appellant's lack of classroom discipline and a lack of any method or practice to insure the students were understanding the materials appellant provided.

Other witnesses testified that appellant did not determine materials to be taught and did not organize any material which was presented to the students. These witnesses also stated that appellant was deficient because she lacked the ability to analyze learning situations and to write objectives which her students could achieve. These witnesses also stated that appellant did not teach the students.

Other matters were testified to by those witnesses at the hearing. A further detailed account of their testimony is not warranted. It can be concluded that the witnesses all stated that appellant did not teach her students. Further, she lacked normal skills in basic teaching requirements. Still further, after repeated counseling and extra sessions by various others, appellant showed no improvement.

 There is no doubt that the evidence upon this record was competent and substantial to support the Board's decision. There is no merit to appellant's final point and it is ruled against her.

Judgment affirmed.

All concur.