**In the Interest of M.C. and T.C., Respondents,**

v.

**D.C., Appellant.**

**No. 54535.**

Missouri Court of Appeals, Eastern District, Southern Division.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1988.

Richard Goldstein, Cape Girardeau, for appellant.

Kevin Blair Spaeth, Daniel P. Finch, Cape Girardeau, for respondents.

CRIST, Judge.

Father appeals from an order of the juvenile court terminating his parental rights. We affirm.

On September 9, 1982, the Division of Family Services (D.F.S.) investigated a hotline report alleging father had sexually abused his daughters M.C., born February 21, 1978, and T.C., born October 17, 1974 (daughters). Father admitted the allegations, and D.F.S. took emergency custody of daughters.

Father pled guilty to charges of sexual abuse and was sentenced to three consecutive ten-year prison sentences. In lieu of incarceration, father was placed on probation for five years on the condition he submit to and complete the sex offender rehabilitation program at Fulton State Hospital. Father completed the program and was released in February of 1984. Following his release from Fulton, father's probation prohibited him from seeing daughters except at counseling sessions supervised by D.F.S. Father continued with counseling after his release.

Daughters were placed in the legal custody of Division of Family Services on September 27, 1982. Mother was granted physical custody under a series of social service agreements between her and D.F.S. This arrangement continued until August of 1986, when mother took daughters to Texas with the intent to relocate there. Mother left Missouri without notice to or the consent of D.F.S.

Mother could not find employment in Texas, so she and daughters voluntarily returned to Missouri in September of 1986. Mother had no place to live, so D.F.S. took full custody of daughters and placed them in foster care. Mother later moved in with father with the intent of rebuilding their marriage. The juvenile officer then filed this action to terminate father's and mother's parental rights in September of 1987. Mother did not contest the petition nor appeal the order terminating her parental rights.

■ Father first asserts the juvenile court erred in terminating his parental rights under § 211.447.2(2)(c), RSMo 1986 because the acts of sexual abuse occurred more than five years prior to the termination proceeding. We disagree.

Father admitted the sexual abuse. His abuse of daughters ended when they were placed in the custody of D.F.S. Because it was prohibited by his probation, father had no opportunity to be alone with daughters after his release. The abuse did not have to be ongoing at the time of the filing of the petition. *In Interest of J.C.G.*, 743

S.W.2d 449, 451–452[2] (Mo.App.1987). Here, the evidentiary weight of the abuse was not substantially affected by the lapse of time between the abuse and the termination proceedings because father had no further opportunity to abuse daughters. *Id.*

Father next asserts his parental rights could not be terminated under § 211.447.2(2)(c), RSMo 1986 because it was not in existence at the time of the acts of abuse. This point is meritless because father is factually wrong. *See* § 211.447.2(2)(c), RSMo 1978.

▪ Father next proffers several points contending the court erred in terminating his parental rights under § 211.447.2(3), RSMo 1986. He contends the following: this ground was not proven by clear, cogent and convincing evidence; this statutory section was not in existence at the time of the acts of abuse; the court failed to make the specific findings required; and the court denied admission of evidence to rebut this ground. We need not consider these contentions because the issue of father's sexual abuse is supported. As long as one of the statutory grounds for termination is sufficiently supported, the termination must be sustained if it is in the children's best interests. *M.L.S. v. C.S.*, 710 S.W.2d 452, 454[4] (Mo.App.1986).

Father next contends termination of his parental rights was not in daughters' best interests in that termination would be traumatic to daughters because of their age (at time of trial 10 and 14) and their strong bonding with father, and that the psychologist treating father and the psychologist treating daughters did not recommend termination. Whether termination of parental rights serves the children's best interests is a judgment to be made by the trial judge under subjective standards. *K.S. v. M.N.W.*, 713 S.W.2d 858, 865[7] (Mo.App. 1986). Due regard is given to the juvenile court's determination on the credibility of the witnesses. *In Interest of S.D.W.*, 702 S.W.2d 527, 529[4] (Mo.App.1985).

▪ Our review of the record reveals that both the psychologist who had treated father and the psychologist who had treated daughters recommended against terminating father's parental rights; however, neither recommended that daughters be returned to father. At the termination hearing father's psychologist believed that at that time the risk that father would abuse daughters again was too great, and father would require another one and a half to four years of counseling before this risk would be low enough for him to be able to live with his daughters. Daughters psychologist believed daughters were at great risk of severe emotional trauma if they were sexually abused again. Both psychologists favored keeping daughters with a foster family until father was emotionally ready to take custody.

The court considered these recommendations against those put forth by the social worker from D.F.S. She stated that D.F.S. believed permanent placement in an adoptive home was a superior alternative to long-term foster care, especially as daughters entered adolescence. The children were considered adoptable, and there were homes available. She believed daughters would adjust well to adoption because they had adjusted well to foster care. In fact, she stated daughters had made significant emotional and developmental gains since placement in the foster home, but long-term placement in the same home could not be guaranteed.

In light of the inability to return daughters to father's custody within a reasonably ascertainable time without exposing them to the risk of sexual abuse, and the undesirability of potentially uncertain long-term foster placement, especially during adolescence, there was sufficient evidence for the court to find termination was in the best interests of daughters. The court was not bound by the contrary recommendations of the treating psychologists. *See In Interest of S.D.W.* at 530[6].

▪ Finally, father asserts the court erred in not interviewing daughters. A review of the statutes under Termination of Parental Rights, §§ 211.442–.487, RSMo 1986, reveals no provision requiring the court to interview the children during a

termination hearing. There was no error. The choice of whether to interview the children is best left to the juvenile court's discretion. *Cf.* § 452.375, RSMo 1986; § 452.385, RSMo 1986; *Williams v. Cole,* 590 S.W.2d 908, 910–11[1] (Mo. banc 1979) (in child custody proceeding pursuant to divorce, court has discretion as to whether it interviews child to determine his preference of custodian).

JUDGMENT AFFIRMED.

PUDLOWSKI, C.J., and DOWD, J., concur.